UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

UNITED STATES OF AMERICA,          :

                                 :

                         Plaintiffs,  :      99 Civ. 9940 (LAP)

                                 :

       v.                             :

                                 :

*PORTRAIT OF WALLY,*            :
A PAINTING BY EGON SCHIELE,     :

                               :

                    Defendants.  :

-------------------------------------------------------------------X

 

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
BY THE LEOPOLD MUSEUM FOUNDATION
FOR RECONSIDERATION OR RE-ARGUMENT**

 

October 16, 2009                           William M. Barron
                                               SMITH, GAMBRELL & RUSSELL, LLP
                                               250 Park Avenue, Suite 1900
                                               New York, New York 10177
                                             (212) 907-9700

                                               *Attorneys for Claimant*
                                             *Leopold Museum-Privatstiftung*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................... 1

    A.    Imputation of Dr. Leopold's Alleged "Knowledge" from the 1950s
           to the Foundation in 1997........................................................................................ 1

    B.    The Recovery Doctrine ............................................................................................ 1

ARGUMENT ....................................................................................................................... 2

I.      THE COURT ERRED IN HOLDING AS THE LAW OF THE CASE
        THAT DR. LEOPOLD'S ALLEGED KNOWLEDGE FROM 1954
        CAN BE IMPUTED TO THE FOUNDATION IN 1997................................................ 2

        A.    Judge Mukasey and The Parties *Assumed for the Purpose of the Motion
              to Dismiss* That the Plaintiff's Allegations Were True; He Neither
              Held Nor Did the Museum Concede That The Allegations *Were* True................... 2

        B.    The Foundation Has Denied The Imputation of Dr. Leopold's Knowledge
              to the Leopold Museum Foundation Throughout  This Litigation. ......................... 5

II.     THE 2009 OPINION MISAPPLIED THE RECOVERY DOCTRINE: IT
        OVERLOOKED RELEVANT EVIDENCE IN THE RECORD,
        INCLUDING THE GOVERNMENT'S INSISTENT RETENTION
        OF THE PAINTING IN 1947 TO INVESTIGATE RESTITUTION
        CLAIMS, AND THE ADMITTED OBLIGATION OF THE U.S. FORCES
        IN AUSTRIA TO EFFECT THE RESTITUTION OF THE PAINTING
        TO ITS OWNER........................................................................................................ 8

III.    IF THE COURT DENIES THE LEOPOLD FOUNDATION'S MOTION FOR
        RECONSIDERATION, THE LEOPOLD FOUNDATION RESPECTFULLY
        REQUESTS CERTIFICATION PURSUANT TO 28 U.S.C. §1292 (b) ......................... 11

CONCLUSION .................................................................................................................... 12

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Campbell v. Cochran,*
416 A. 2d 211 (Del. Sup. 1980) ..................................................................................10

*Danielson v. Roberts,*
44 Or. 108, 74 Pac. Rptr 913 (1904)...........................................................................10

*McKenzie v. BellSouth Telecommunications, Inc.,*
219 F.3d 508 (6th Cir. 2000) ........................................................................................4

*Robbins v. Wilkie,*
 433 F.3d 755 (10th Cir. 2006), *rev'd on other grounds,* 551 U.S. 537 (2007) ..........3, 4

*United States v. Muzii,*
676 F.2d 919 (1982)......................................................................................................9

*United States v. Portrait of Wally,*
105 F. Supp. 2d 288 (S.D.N.Y. 2000) (*"Wally I"*)................................................10, 11

*United States v. Portrait of Wally,*
No. 99 Civ. 9940 (MBM), 2002 U.S. Dist. LEXIS 6445
(S.D.N.Y. Apr. 11, 2002) (*"Wally III"*)................................................................. *passim*

**Statutes and Rules**

28 U.S.C. §1292(b) ................................................................................................11, 12

Fed. R. Civ. P. Rule 12(b)(6) .............................................................................1, 2, 3, 7

Fed. R. Civ. P. Rule 54(b)..............................................................................................1

Fed. R. Civ. P. Rule 56 ..................................................................................................3

Fed. R. Civ. P. Rule 60 ..................................................................................................1

Local Civil Rule 6.3.......................................................................................................1

## PRELIMINARY STATEMENT

The Leopold Museum Foundation (the "Foundation" or the "Museum") respectfully submits the following memorandum in support of its motion under Fed.R.Civ.P. Rules 54(b) and 60 and Local Civil Rule 6.3 for reconsideration or re-argument of parts of the Court's Opinion and Order dated September 30, 2009 (the "2009 Opinion"). As explained below, the Court erred as a matter of law and overlooked established jurisprudence and the record of this case, particularly relating to the following matters:

A.      Imputation of Dr. Leopold's Alleged "Knowledge" from the 1950s
         to the Foundation in 1997

In holding that Dr. Rudolph Leopold's alleged knowledge from the 1950s should be imputed to the Foundation in 1997 (pp. 102-105), the 2009 Opinion erred in applying a statement from *Wally III* as the "law of the case." The 2009 Opinion overlooked that *Wally III* denied a Rule 12(b)(6) motion to dismiss, and therefore only tested the *allegations* of the Complaint, not Plaintiff's *evidence*. The 2009 Opinion also overlooked the record establishing that the Foundation has contested the allegation of *scienter* throughout these proceedings.

B.      The Recovery Doctrine

The 2009 Opinion erred in declining to apply the recovery doctrine because it overlooked (i) the evidence that the United States Forces in Austria in 1947 continued to hold the Painting it had seized, knowing it was to be restituted to its Jewish owner, even though the U.S. Government may not have known it was "stolen" and (ii) the Government's own documentary admission (001289-1295), in which it expressly acknowledged that: "The Occupying Powers were charged with the tremendous task of restoring to its rightful owners this wealth which had been extorted under duress."

1

## ARGUMENT

I.   THE COURT ERRED IN HOLDING AS THE LAW OF THE CASE
     THAT DR. LEOPOLD'S ALLEGED KNOWLEDGE FROM 1954 CAN
     BE IMPUTED TO THE FOUNDATION IN 1997

In its 2009 Opinion, the Court concluded that Judge Mukasey in *Wally III* had "*held* that

Dr. Leopold's knowledge as to *Wally's* status is properly imputed to the Museum" (p.102,

emphasis added), that the Government had repeatedly made this argument in its 2001 brief

opposing the motion to dismiss and that the Foundation had "offered no rebuttal" (103), and that

the Foundation "six years later" "belatedly contest[ed] Judge Mukasey's finding, arguing for the

first time that imputing Dr. Leopold's knowledge to the Museum is improper." (*Id.*)  The record,

however, makes clear that these assumptions and conclusions of the Court were incorrect.  Judge

Mukasey's holding was limited to the *sufficiency* of the Government's *allegations*, not the

allegations' truth.  And on several occasions throughout this litigation, the Foundation expressly

denied the Government's allegations, including the suggestion that Dr. Leopold's alleged

knowledge from 1954 — 40 years before the Museum even existed — could be imputed to the

Museum in 1997 after Dr. Leopold became a director.

> A.   Judge Mukasey and The Parties *Assumed for the Purpose of the
>      Motion to Dismiss* That the Plaintiff's Allegations Were True; He
>      Neither Held Nor Did the Museum Concede That The Allegations
>      *Were* True.

In *Wally III,* Judge Mukasey ruled on the Leopold Foundation's motion to dismiss the

Complaint pursuant to Rule 12(b)(6).  As Judge Mukasey noted in the third paragraph of his

decision, on a motion to dismiss "the factual allegations pleaded in the complaint are taken as

true and are construed in the light most favorable to the plaintiff."  Paragraph 10 of the

Complaint alleged the *scienter* at issue here, averring that the Painting was imported "by The

Leopold Foundation, through Dr. Leopold, . . . knowing it to have be stolen. "  On May 30, 2002,

the Leopold Museum served and filed its answer to the Complaint (Docket Entry No. 128),

specifically *denying* these allegations.

The statement in *Wally III*, that the parties had conceded that Dr. Leopold's knowledge

can be imputed to the Foundation, may not be treated as a holding or "finding" and cannot be

deemed "law of the case" on a subsequent motion for summary judgment. The Leopold

Foundation and MoMA motions to dismiss that were decided in *Wally III* tested only the

sufficiency of the Complaint's allegations, which the parties conceded to be true for purposes of

the motions.  Indeed, the allegation of *scienter* in paragraph 10 of the Complaint could not be

contested on the Leopold Museum's Rule 12(b)(6) motion, but only by way of its Answer and

subsequent motion for summary judgment.[1]

The 2009 Opinion overlooked the basic difference between a ruling on a Rule 12(b)(6)

motion to dismiss, which was the subject of Judge Mukasey's ruling in *Wally III*, and a motion

for summary judgment under Rule 56, which was the subject of the 2009 Opinion.  A ruling on a

motion to dismiss, by definition, does not make findings of fact, but only tests the sufficiency of

the complaint's allegations.  Accordingly, denial of a motion to dismiss does not and cannot

establish the law of the case for purposes of summary judgment, when the complaint has been

supplemented by discovery and the resulting evidence is submitted to the Court. *See, e.g.,*

*Robbins v. Wilkie,* 433 F.3d 755, 764 (10th Cir. 2006), *rev'd on other grounds,* 551 U.S. 537

(2007) ("A district court's decision denying a defendant's motion to dismiss on qualified

immunity is not law of the case for purposes of a subsequent motion for summary judgment on

qualified immunity.  . . . On a motion to dismiss, a court examines the conduct alleged in the

---

[1]  The Court suggests in the 2009 Opinion (pp. 104-105) that the Foundation was "free to request
reconsideration" of Judge Mukasey's "All parties concede . . ." statement.  But because Judge
Mukasey's statement was procedurally unremarkable — allegations always being conceded as
true for the purpose of a motion to dismiss — reconsideration was not appropriate.

3

complaint . . . whereas on a motion for summary judgment, a court examines the evidence

gathered during discovery."); *McKenzie v. BellSouth Telecommunications, Inc.*, 219 F.3d 508,

513 (6th Cir. 2000) ("Our holding on a motion to dismiss does not establish the law of the case

for purposes of summary judgment, when the complaint has been supplemented by discovery.")

The only issue in *Wally III* was the adequacy of the Government's allegations, not the facts and

evidence necessary to prove those allegations.

Moreover, when the 2009 Opinion (at page 103) quoted from parts of four separate

statements in a 2001 Memorandum of Law filed by the Government in opposition to the Leopold

Museum's then-pending motion to dismiss, the 2009 Opinion overlooked the fact that each of

these statements referred solely to the adequacy of the allegations in the Complaint.[2]  Thus, the

---

[2]  The 2009 Opinion (p. 103) quotes from portions of the June 14, 2001 Government's
Memorandum of Law in Opposition to Motions to Dismiss the Third Amended Verified
Complaint of the Leopold Museum-Privatstiftung and the Museum of Modern Art as Claimants
and the American Association of Museums, et al. as *Amici Curiae* ("Gov't June 14, 2001 Opp.
Mem."). These four excerpts, however, are incomplete, excluding language showing that the
Government was not addressing the merits of the case, but only the Complaint's allegations.
The more complete four quotations from the Government's brief are reproduced below:

- "The Leopold and MoMA also argue the Complaint does not sufficiently allege scienter
  under the NSPA.  To the contrary, *the Complaint contains numerous allegations*
  supporting an inference that the Leopold, through its Museological Director, Dr. Leopold,
  imported the Painting with knowledge that it was stolen property." Gov't June 14, 2001
  Opp. Mem. at 28-29 (emphasis added).  (cont'd on next page)

- "Thus, the Complaint contains ample allegations giving rise to a reasonable belief that the
  Government at trial will be able to show probable cause that Dr. Leopold acquired *Wally*
  by conversion and that the Leopold, through it [sic] Museological Director, Dr. Leopold,
  had the requisite knowledge that *Wally* had been obtained by conversion. See Daccarett,
  6 F.3d at 47. *Thus, the Complaint is not subject to dismissal on this basis.*" *Id.* at 124
  (emphasis added).

- "Contrary to this *claim*, the detailed *allegations in the Complaint* clearly are sufficient to
  support a reasonable belief that the Government will be able to show probable cause at
  trial that the Leopold, through Dr. Leopold, knew *Wally* to be stolen and converted
  property at the time it was imported into the United States." *Id.* (emphasis added).

(cont'd on next page)

4

2009 Opinion erred in stating that "the Government repeatedly argued that the Museum knew what Dr. Leopold knew, and the Museum offered no rebuttal." (2009 Opinion at 103). In fact, the Government in 2001 only argued what it was entitled to argue:  that *the Complaint sufficiently alleged* the element of knowledge on the part of the Leopold Museum.

> B.      The Foundation Has Denied The Imputation of Dr. Leopold's
>         Knowledge to the Leopold Museum Foundation Throughout
>         This Litigation.

In its Answer to the Complaint filed more than seven years ago, the Leopold Museum expressly denied the allegation of the Museum's knowledge.  *See* Answer of Claimant Leopold Museum-Privatstiftung to the Complaint dated and filed May 30, 2002 (Docket Entry No. 128). Paragraph 10 of the Complaint alleged that the "Defendant *in Rem* . . . was introduced into the United States . . . by the Leopold Foundation, through Dr. Leopold, . . . knowing it to have been stolen . . . ."  The Leopold Museum's Answer *denied* these allegations.

Three years later, in its first motion for summary judgment filed on June 3, 2005, the Leopold Museum again rejected the Government's position regarding the Museum's knowledge. (Docket Nos. 165-170.)[3]  The 2005 moving brief and supporting authorities argued that the Leopold Museum had no actual or imputed knowledge in 1997 that the Painting was "stolen" or "converted property" (pp. 42-45), and, in particular, that Dr. Leopold's alleged guilty "knowledge" from 1954, 40 years before the Foundation even existed, could not be imputed to

---

(cont'd from previous page)

- "As explained previously, . . . there are numerous *allegations in the Complaint* supporting an inference that the *Leopold*, through Dr. Leopold, imported *Wally* with knowledge that it was stolen from Bondi." *Id.* at 125 (emphasis added).

[3] That motion was subsequently denied as premature, subject to renewal following the close of discovery. (Docket No. 180)

the Leopold Museum. (*Id.* at 43-46.)[4]  The Memorandum of Law that accompanied the 2005

motion contained the following passage addressing the very statement in *Wally III* now held by

the 2009 Opinion to be the law of the case:

> [A]s a result of this total silence during such a remarkable
> passage of time, Plaintiff cannot meet the *scienter*
> requirement of 18 U.S.C. § 2314 because the Leopold
> Museum had no knowledge of any claim that the Painting
> was stolen or converted (much less knowledge that such a
> claim was correct).  Although the issue was not addressed
> by the parties, the opinion in *Wally III* stated broadly that
> Dr. Leopold's knowledge could be imputed to the
> Leopold Museum by reason of his having been the
> Museological Director at "all relevant times." *Wally III*,
> 2002 U.S. Dist. LEXIS 6445, at *77.  The statement was
> correct insofar as knowledge acquired by Dr. Leopold in
> his capacity as a director (*i.e.*, after 1994) can generally
> be imputed to the Leopold Museum, but this general legal
> principle of imputation fails here to the extent information
> was learned by Dr. Leopold long before the existence of
> the Foundation or was such that it would be unreasonable
> to presume he would reveal or convey the information to
> the Leopold Museum Foundation.

The 2009 Opinion also overlooked the November 8, 2004 Declaration of Dr. Rudolf

Leopold (Docket No. 164 and Levin Decl. Volumes IV(a) and IV(b)) that supported the 2005

Leopold Museum Motion for Summary Judgment, in which Dr. Leopold stated under oath (para.

66) that as of September 1997 he had not heard from Mrs. Jaray (Bondi) or from anyone else

concerning the Painting for 40 years, and that he "did not think at all of these old conversations

and letters again, and I had no doubt whatsoever that the Leopold Museum is the owner of the

Painting '*Portrait of Wally*'."  The Government received this Declaration of Dr. Leopold almost

two years before conducting his eight-day deposition in Vienna in October 2006, and in fact

---

[4] The comment in *Wally III* referred only to Dr. Leopold's time as Museological Director after
1994, and certainly did not suggest that his knowledge 40 years earlier was imputable.

examined him on that Declaration. (*See* Levin Decl. Vol. IV(b), which is Rudolf Leopold Deposition Exhibit 2.)

Other than the "concession" necessarily made for purposes of a Rule 12(b)(6) motion that the allegations of the Complaint are deemed true, neither the Museum nor its counsel have ever conceded the imputation of Dr. Leopold's alleged knowledge to the Foundation. *See* Reply Declaration of William M. Barron dated May 14, 2009, ¶ 6. Nor has the Government ever identified such a concession. Nor does the 2009 Opinion.

Both the Leopold Museum's Rule 56.1 Statement of Undisputed Material Facts filed in support of its 2005 Motion for Summary Judgment (Docket No. 167) and the Rule 56.1 Statement filed in support of the subsequent Motion for Summary Judgment (Docket No. 256) that was denied in the 2009 Opinion, contained the identical statement in Paragraphs 86 and 89, respectively, asserting that the Leopold Museum had no knowledge, information or notice in 1997 that the Painting was stolen or converted.[5] The Government's Rule 56.1 response filed on March 26, 2009 disputed this assertion based solely upon the unsupported claim that Dr. Leopold had "controlling influence over the Museum Board" and "unfettered authority", such that his knowledge from 40 years earlier was to be imputed to the Museum. This "sole actor doctrine" (or "*sine qua non*" argument as described by the Government) was the only fact contention set forth in response to Paragraph 89 of the Leopold Museum's 56.1 Statement. The 2009 Opinion also overlooked the April 20, 2009, Declaration of Martin Eder, (Docket No. 283), who has been a member of the Foundation's Board since 1994 and who testified as to how the Foundation operates and makes decisions. Dr. Eder testified in detail as to why it would be impossible for

---

[5] That statement was: "Prior to December 1997, the Leopold Museum had no actual knowledge, information or notice indicating (a) the existence of a claim to the Defendant *in Rem* by LBJ (Bondi), her estate or her heirs, or (b) that the Defendant *in Rem* was allegedly stolen or converted property."

7

Dr. Leopold to control or dominate the Board, and that Dr. Leopold has never made any effort to do so.

For the foregoing reasons, the 2009 Opinion erred in concluding:  (1) that the statement in *Wally III* — that "[a]ll parties concede that Dr. Leopold's knowledge can be imputed to the Leopold Foundation ..."— amounted to a *substantive* holding that "Dr. Leopold's knowledge as to *Wally's* status is properly imputed to the Museum" (2009 Opinion at 102); and (2) that this "holding" constitutes the law of the case.

II.    THE 2009 OPINION MISAPPLIED THE RECOVERY DOCTRINE: IT
       OVERLOOKED RELEVANT EVIDENCE IN THE RECORD,
       INCLUDING THE GOVERNMENT'S INSISTENT RETENTION OF
       THE PAINTING IN 1947 TO INVESTIGATE RESTITUTION CLAIMS,
       AND THE ADMITTED OBLIGATION OF THE U.S. FORCES IN
       AUSTRIA TO EFFECT THE RESTITUTION OF THE PAINTING TO
       ITS OWNER

The 2009 Opinion overlooked the task of the United States Forces in Austria — in the Government's own words — to recover art treasures and other moveable property that had been stripped by Germany from occupied countries:  "The Occupying Powers were charged with the tremendous task of restoring to its rightful owners this wealth which had been extorted under duress."  The Rehabilitation of Austria 1945-1947, Prepared by United States Allied Commission Austria, Bates No. 001289-1295 (Levin Decl. Ex. 14 at 001295).

Whether or not the U.S. Forces initially knew that the Painting actually belonged to a Jewish victim of Nazi oppression from whom it had been "extorted under duress", the record establishes that by September 1947 the Painting had been taken from Friedrich Welz, was under U.S. Military Government control and was stored in a warehouse in Salzburg. The U.S. Forces then informed Welz that the Painting would not be released until the RDR (Reparations, Deliveries and Restitution Division) of the U.S. Military Government completed its

8

"investigation of restitution claims against this collection." (LM 56.1 St. ¶ 19(c); Lide Decl.

Ex. B) (Letter from Lt. Col. Raymond F. Gunn of the U.S. Forces, dated September 4, 1947, to

Friedrich Welz).[6]

The elements of the recovery doctrine, as explained in *United States v. Muzii*, 676 F.2d

919 (1982), were thus fulfilled because the Government asserted continuing possession, control

and restraint over the Painting in 1947, then conducted its investigation of the restitution claims

of the Rieger heirs and determined in November 1947 that the Painting should be restituted to

those heirs.  Two months after Lt. Col. Gunn wrote to Welz, Evelyn Tucker, a representative of

the MFA&A[7] section of the RDR Division, visited Salzburg, inspected the Painting and other

paintings, and met with Welz.  (LM 56.1 St. ¶ 21; Barron Decl. Ex. C at LB 0795-98)  (The

entire report is Barron Decl. Ex. F at LM 0582-590.)  The report lists paintings that were

"purchased by Welz during the War and are part of a list of *paintings claimed by the son and*

*heir of Dr. Heinrich Rieger*."  (Emphasis added.)  The report refers to one of those paintings as

"'His Wife's Portrait' — by Egon Schiele (located Residenz Depot)" — *i.e.* the Defendant *in*

*Rem.*  Her report states:

> Inasmuch as the above are part of a claim for 26 paintings
> which the son [of Dr. Rieger] claims were purchased by Welz
> from his father's confiscated collection they will be handled a
> little differently from the other pre-war Austrian paintings. Dr.
> Demus, President of the  Bundesdenkmalamt, wishes these
> released to the Bundesdenkmalamt representative in the zone
> and it, in turn, will handle the internal restitution in accordance
> with the Austrian restitution laws.

---

[6] The letter from Lt. Col. Gunn to Welz stated:

> 2.  You are advised that the release of this property cannot be effected until the
> above-named office [of the U.S. Army] has completed the investigation of restitution
> claims against this collection.

[7] The abbreviation "MFA&A" stands for the U.S. Government's department of "Monuments,
Fine Arts & Archives."

That the Government was obliged to seek the true owners and arrange to restore the property to them cannot be doubted, and that is what the Government did. Under the common law, even one who finds and takes into possession lost property, much less stolen property or property taken under duress, has an obligation to take reasonable steps to find the true owner. *Campbell v. Cochran*, 416 A. 2d 211, 222 (Del. Sup. 1980). Such a finder of lost property who exercises control over the property is deemed to have the obligations of taking reasonable care of it and holding it for the true owner. *Danielson v. Roberts*, 44 Or. 108, 74 Pac. Rptr 913, 914-915 (1904). In post-war Austria, the United States Allied Commission similarly made clear that the Occupying Forces were charged with the task of restoring art treasures like the Painting to its owner.

Whether the Government in 1947 could identify the true owner or knew how the true owner had lost possession of the property is irrelevant. As the Court held in *Wally I*, the recovery doctrine applies whenever goods are recovered by *"anyone who has a right to possession or control over them."* 105 F. Supp. 2d at 294. The 2009 Opinion overlooked this law of the case and erroneously focused on whether the United States Forces in 1947 "had any real knowledge of *Wally's* history" (p. 67) and on whether the U.S. Forces "knew it had been stolen" (p. 69). That focus, however, is in error because it overlooks both the common law and the law applicable to the U.S. Occupation Forces which charged the Government with restoring to its rightful owners art treasures "which had been extorted under duress", not only those that had been "stolen." All property that had been purchased, aryanized, stolen, confiscated or otherwise taken from Jews during the Nazi era was to be restituted to them (which is why the U.S. Government refused in 1947 to release the property to Friedrich Welz: it was conducting its own investigation of restitution claims against the artworks). As Judge Mukasey held in *Wally I*, it made no difference if the Painting may not have been placed in the correct hands when the

10

Rieger heirs received it, because "in the eyes of the law it was no longer stolen."[8]  105 F.Supp.

2d. at 294.  This is the law of case, and the 2009 Opinion overlooked it.


III.    IF THE COURT DENIES THE LEOPOLD FOUNDATION'S MOTION
        FOR RECONSIDERATION, THE LEOPOLD FOUNDATION
        RESPECTFULLY REQUESTS CERTIFICATION PURSUANT TO
        28 U.S.C. §1292 (b)

        28 U.S.C. §1292(b) provides, in pertinent part, that this Court, in making an order not

otherwise appealable, may include in its order a statement that the order involves "a controlling

question of law as to which there is substantial ground for difference of opinion and that an

immediate appeal from the order may materially advance the ultimate termination of the

litigation."  Because the evidentiary matters of record and controlling questions of law discussed

in Points I and II above are such that an immediate appeal from this Court's order may materially

advance the ultimate termination of the litigation, and because there is substantial ground for

difference of opinion, the Museum respectfully requests certification by this Court should it

decline to grant the instant motion for reconsideration.

---

[8] Although the 2009 Opinion goes on to discuss the role of the BDA in Austria, that analysis is
irrelevant to finding that the recovery doctrine applies.  The recovery had become complete by
the time the U.S. Government withheld the Painting from Welz in 1947 in order to conduct its
own restitution investigation.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in the papers filed or recited in the

Leopold Museum's motion for summary judgment, this Court should reconsider its decision in

the September 30, 2009 Opinion and grant summary judgment in favor of the Leopold Museum;

or in the event such relief is denied, this Court should certify the questions of law raised in

Point I and Point II above pursuant to 28 U.S.C. §1292 (b), and grant the Leopold Museum such

other and further relief as this Court deems just and proper.


Dated:   New York, New York
         October 16, 2009


                                        Respectfully submitted,

                                        SMITH, GAMBRELL & RUSSELL, LLP



                                        William M. Barron
                                        David W. Barron
                                        250 Park Avenue
                                        New York, New York 10177
                                        Tel: 212-907-9700

                                        *Attorneys for Claimant*
                                        *Leopold Museum-Privatstiftung*

SGRNYC\6283.1