```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/20/10
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

UNITED STATES OF AMERICA,          :
                                   :
            Plaintiff,             :
                                   :          99 Civ. 9940 (LAP)
                                   :
        -v.-                       :
                                   :
*PORTRAIT OF WALLY*,               :
A PAINTING BY EGON SCHIELE,        :
                                   :
            Defendant *in Rem*.    :
------------------------------------------------------x

### STIPULATION AND ORDER OF SETTLEMENT AND DISCONTINUANCE

This Stipulation and Order of Settlement and Discontinuance ("this Stipulation") is made

and entered into as of this 19th day of July, 2010, by and among plaintiff, the United States of

America (the "Government"), claimant Leopold Museum Privat-Stiftung (the "Foundation") and

claimant Estate of Lea Bondi Jaray (the "Estate") (collectively, "the Parties").

### RECITALS

**WHEREAS**, the Government commenced a civil action in the United States District

Court for the Southern District of New York, entitled *United States v. Portrait of Wally, a*

*Painting by Egon Schiele*, No. 99 Civ. 9940 LAP  (SDNY)  (the "Action"), seeking civil

forfeiture of a painting by Egon Schiele referred to as "Portrait of Wally" (the "Painting");

WHEREAS, the Foundation and the Estate have asserted claims to the Painting in the Action;

WHEREAS, the Parties wish to resolve this matter without further litigation;

NOW, THEREFORE, in consideration of the above recitals, and the mutual promises and covenants set forth herein, the Parties stipulate and agree as follows:

1.    Consideration Paid.  Within two (2) business days after the execution of this Stipulation by the Parties and receipt of a true copy signed by all parties, the Foundation shall transfer by wire nineteen million U.S. dollars (US $19,000,000) (the "Settlement Sum") to the U.S. Treasury Suspense Account, in accordance with written instructions agreed upon by all Parties.

2.    Loan Contract.  Within two (2) business days after the execution of this Stipulation by the Parties, and after approval in writing by the Government and the Estate, which approval shall not be unreasonably withheld,  the Foundation will enter into a loan contract (the "Loan Contract") with the Museum of Jewish Heritage in New York (the "Exhibiting Museum") for the temporary display of the Painting for a period of three (3) weeks (the "Exhibition"), as described further in paragraph 5, below.

3.    Termination of Action.  Promptly following the execution of this Stipulation, the Parties shall submit to the United States District Court for the Southern District of New York this fully executed Stipulation to be endorsed and "So Ordered" by the Court.  Upon such endorsement and its entry on the docket, the Action is hereby dismissed with prejudice, without costs and/or attorney's fees to any Party.

2

4.     <u>Transfer and Delivery of the Painting.</u>   Within two (2) business days of (i) the

execution of the Loan Contract and the notification to the Government and the Estate thereof or

(ii) notification from the United States District Court for the Southern District of New York that

the Action has been dismissed, whichever occurs later, and after delivery of the Settlement Sum

to the U.S. Treasury Suspense Account, the Government will notify the Foundation in writing

(and provide a copy to the Estate) that the Painting is available for pick-up from the warehouse at

which it is currently being stored by U.S. Immigration and Customs Enforcement ("ICE") (the

"Government Notification").   The Government Notification shall specify the address of such

warehouse. The Government, the Foundation and the Estate will agree in writing on the exact

date and time for the Painting's transfer (the "Transfer Date and Time"), and the Foundation and

the Estate will provide the Government in writing with the names of its respective

representatives who will be present at the transfer.   At the Transfer Date and Time, (an) agent(s)

of ICE shall deliver possession of the Painting to a representative of the Foundation, who shall

inspect the painting to confirm its identity and condition and upon such confirmation sign a

receipt (in the form attached hereto as Exhibit A) evidencing the Foundation's receipt of the

Painting (the "Receipt").   Upon such transfer of possession of the Painting, the Foundation shall

have possession, full and uncontroverted title and full liability and responsibility for the Painting.

5.     <u>Museum Exhibition of the Painting</u>.   Immediately following the transfer of the

Painting to the Foundation, as provided in paragraph 4, above, the Foundation shall cause the

Painting to be en route to the Exhibiting Museum for the purposes of the loan of the Painting to

the Exhibiting Museum pursuant to the terms of the Loan Contract referenced in paragraph 2,

above. The Foundation shall not export the Painting from the United States at any time before

the Exhibition begins and may do so only after the Exhibition has ended.   All Parties shall

3

expend their best efforts to arrange for the Exhibition to commence as soon as is reasonably

feasible after the Foundation receives possession of the Painting.  The Parties agree, and the

Loan Contract shall also provide, that (a) a ceremony will be held in connection with the opening

of the Exhibition, to commemorate the legacy of Lea Bondi Jaray and the successful resolution

for all Parties of the Action; (b) the following statement shall be prominently displayed next to

the Painting at the Exhibition; (c) no Party, counsel or other person in privity with a Party or the

Exhibiting Museum will provide any other written reference to the provenance of the Painting in

any form at, or in connection with, the Exhibition.

> This Painting ("Portrait of Wally" by Egon Schiele) was the personal property of
> Lea Bondi Jaray, a Jewish art dealer in Vienna, who fled in 1939 to London,
> where she died in 1969.  The Painting subsequently became the subject of court
> proceedings in New York City from 1998 to 2010, after it was loaned in 1997 to
> the Museum of Modern Art in New York (MoMA) by the Leopold Museum as
> part of an exhibition of Schieles from the Leopold Museum's collection.  In 1999,
> the United States Government commenced a civil forfeiture action in New York,
> alleging that the Painting was stolen from Lea Bondi Jaray during the Nazi era by
> a Nazi named Friedrich Welz, and was imported into the United States in 1997 by
> the Leopold Museum in violation of U.S. law.  The Estate of Lea Bondi Jaray
> asserted a claim to the Painting in the action, and the U.S. Government agreed
> that upon forfeiture of the Painting, it would transfer to the Estate all right and
> title to the Painting.  Based on the evidence presented during the case, the United
> States District Court in New York concluded in 2009 that the Painting was the
> personal property of Lea Bondi Jaray and that it was stolen from her in Vienna in
> the late 1930's by Friedrich Welz, who was a member and collaborator of the Nazi
> party.  The Court found that the Painting had been seized from Welz by the U.S.
> Forces in Austria after the War and delivered in 1947 to the Austrian Federal
> Office for the Preservation of Historical Monuments (the "Bundesdenkmalamt"),
> along with paintings Welz had acquired from Dr. Heinrich Rieger, a Jewish art
> collector who had perished during the Holocaust.  In 1950, the
> Bundesdenkmalamt delivered artworks to an agent for the Rieger heirs and
> included the Painting in the delivery.  Later that year, the Rieger heirs sold their
> works to the Austrian National Gallery (the "Belvedere"), and the Painting was
> included in the delivery of the artworks to the Belvedere.  In 1954, the Belvedere
> traded the Painting to Dr. Rudolf Leopold.  In 1994, Dr. Leopold transferred the
> Painting to the Leopold Museum.  Following the Court's findings on these issues,
> the case was finally resolved in 2010 by the U.S. Government, the Estate and the
> Leopold Museum.  The Leopold Museum agreed to pay the Estate a substantial
> sum and, in return, the Estate agreed to release its claim to the Painting and the

Government agreed to dismiss the civil forfeiture action and release the Painting to the Leopold Museum. The three parties also agreed that the Painting was to be loaned by the Leopold Museum to this museum for this exhibition.

6. <u>Payment to the Estate and Estate Payment of Storage Fees</u>. Within two (2) business days after the close of the Exhibition, the Foundation shall certify in writing to the Government and the Estate that the Painting has been packed, shipped and is en route to Austria or that the Painting will not be transported to Austria for reasons other than an Export Restriction, defined below (the "Certification"). Upon receipt of the Certification, the Government shall direct the Treasury Executive Office for Asset Forfeiture to immediately release the Settlement Sum, less total storage costs for the Painting in the amount of [$50,808.97], to an account held by Herrick, Feinstein LLP, as attorneys for the Estate ("HF"), in accordance with written instructions to be provided to the Government by the Estate; *provided, however, that* the Settlement Sum will not be paid or released to the Estate if the transport of the Painting to Austria is delayed as a result of a seizure, subpoena, attachment, or official act or proceeding of any kind, whether civil, criminal, federal, state, local or otherwise, preventing, hindering, limiting or conditioning such shipment of the Painting to the Foundation in Vienna (an "Export Restriction"), in which case the Estate shall be paid only once the Export Restriction is finally and conclusively eliminated and resolved in favor of the Foundation and the Certification is received; and provided further, that if such an Export Restriction is not thus eliminated and resolved within two (2) months, the Settlement Sum shall be credited back and transmitted immediately by the Treasury Executive Office for Asset Forfeiture to the account in Vienna designated by the Foundation, but the Settlement Sum shall again be transferred to the U.S. Treasury Suspense Account referenced in paragraph 1 above, immediately after any and all Export Restrictions are thus eliminated and resolved, and the Painting shall be and remain in the

5

exclusive jurisdiction of this Court for purposes of this clause, requiring the Foundation to comply with this requirement and only thereafter to give the Certification required above, under penalty of contempt. Notwithstanding the foregoing, any Export Restriction with regard to the Painting is prohibited by this Stipulation and New York Arts and Cultural Affairs Law, Section 12.03. Upon the Government's release of the Settlement Sum to the aforementioned account held by HF, the United States shall have clear title to the Storage Fees, the Storage Fees shall be forfeited to the United States for disposition according to law, and the United States Customs and Border Protection ("CBP") or its designee may dispose of the Storage Fees according to law.

7.     Permanent Exhibition Signage. The Foundation shall prominently display the following statement, in both English and German ("the Permanent Signage Statement"), next to the Painting at every future display of the Painting of any kind that the Foundation authorizes or allows, whether physically located at the Leopold Museum in Vienna or elsewhere, anywhere in the world:

> This Painting ("Portrait of Wally" by Egon Schiele) was the personal property of Lea Bondi Jaray, a Jewish art dealer in Vienna, who fled in 1939 to London, where she died in 1969. The Painting subsequently became the subject of court proceedings in New York City from 1998 to 2010, after it was loaned in 1997 to the Museum of Modern Art in New York (MoMA) by the Leopold Museum as part of an exhibition of Schieles from the Leopold Museum's collection. In 1999, the United States Government commenced a civil forfeiture action in New York, alleging that the Painting was stolen from Lea Bondi Jaray during the Nazi era by a Nazi named Friedrich Welz, and was imported into the United States in 1997 by the Leopold Museum in violation of U.S. law. The Estate of Lea Bondi Jaray asserted a claim to the Painting in the action, and the U.S. Government agreed that upon forfeiture of the Painting, it would transfer to the Estate all right and title to the Painting. Based on the evidence presented during the case, the United States District Court in New York concluded in 2009 that the Painting was the personal property of Lea Bondi Jaray and that it was stolen from her in Vienna in the late 1930's by Friedrich Welz, who was a member and collaborator of the Nazi party. The Court found that the Painting had been seized from Welz by the U.S. Forces in Austria after the War and delivered in 1947 to the Austrian Federal Office for the Preservation of Historical Monuments (the "Bundesdenkmalamt"),

6

along with paintings Welz had acquired from Dr. Heinrich Rieger, a Jewish art
collector who had perished during the Holocaust.  In 1950, the
Bundesdenkmalamt delivered artworks to an agent for the Rieger heirs and
included the Painting in the delivery.  Later that year, the Rieger heirs sold their
works to the Austrian National Gallery (the "Belvedere"), and the Painting was
included in the delivery of artworks to the Belvedere. In 1954, the Belvedere
traded the Painting to Dr. Rudolf Leopold. In 1994, Dr. Leopold transferred the
Painting to the Leopold Museum. Following the Court's findings on these issues,
the case was finally resolved in 2010 by the U.S. Government, the Estate and the
Leopold Museum.  The Leopold Museum agreed to pay the Estate a substantial
sum and, in return, the Estate agreed to release its claim to the Painting and the
Government agreed to dismiss the civil forfeiture action and release the Painting
to the Leopold Museum.

Dieses Gemälde („Bildnis Wally" von Egon Schiele) war persönliches Eigentum
von Lea Bondi Jaray, einer jüdischen Kunsthändlerin in Wien, die 1939 nach
London floh, wo sie 1969 verstarb. Das Gemälde wurde 1998-2010 Gegenstand
eines Gerichtsverfahrens in New York City, nachdem es das Leopold Museum
1997 als Teil einer Ausstellung von Schieles Werken aus der Sammlung des
Leopold Museums dem Museum of Modern Art in New York (MoMA) geliehen
hatte. Die Regierung der Vereinigten Staaten von Amerika strengte 1999 eine
zivilrechtliche Einziehungsklage in New York an und behauptete, dass das
Gemälde seinerzeit während der nationalsozialistischen Zeit von einem Nazi
namens Friedrich Welz von Lea Bondi Jaray gestohlen und 1997 unter Verletzung
von US-Recht vom Leopold Museum eingeführt worden sei. Der Nachlass von
Lea Bondi Jaray machte im Rahmen des Verfahrens einen Anspruch auf das
Gemälde geltend; und die US-Regierung erklärte sich damit einverstanden, dass
man nach Einziehung des Gemäldes alle Eigentumsrechte hieran an den Nachlass
übertragen werde.  Auf Grundlage des Beweismaterials, das im Rahmen dieser
Sache vorgelegt wurde, kam die Lokalabteilung des Bundesgerichts (United
States District Court) in New York 2009 zu dem Schluss, dass das Gemälde
persönliches Eigentum von Lea Bondi Jaray sei und dass Friedrich Welz, der ein
Mitglied und Kollaborateur der Nazi-Partei gewesen war, sich das Werk im Wien
der späten 1930er Jahre widerrechtlich angeeignet habe. Das Gericht stellte fest,
dass das Gemälde nach dem Krieg von Welz durch die US-Streitkräfte in
Österreich konfisziert und 1947 zusammen mit anderen Gemälden, die Welz von
Dr. Heinrich Rieger erhalten hatte, einem jüdischen Kunstsammler, der dem
Holocaust seinerzeit zum Opfer gefallen war, an das österreichische
Bundesdenkmalamt (BDA) übergeben worden war. 1950 übergab das
Bundesdenkmalamt Kunstwerke an einen Vertreter der Rieger-Erben, so auch das
besagte Gemälde. Im späteren Verlauf des Jahres verkauften die Rieger-Erben
ihre Werke an die Österreichische Galerie ("Belvedere"), wobei das Gemälde Teil
des Lieferumfangs war. 1954 kam ein Geschäft zwischen dem Belvedere und Dr.
Rudolf Leopold zustande, bei dem Dr. Rudolf Leopold das Gemälde erwarb. 1994
überließ Dr. Leopold das Gemälde dem Leopold Museum. Im Anschluss an die
gerichtliche Feststellung dieser Streitpunkte, wurde die Sache 2010 von der US-
Regierung, dem Nachlass und dem Leopold Museum endgültig beigelegt. Das

> Leopold Museum erklärte sich bereit, dem Nachlass einen erheblichen Betrag zu bezahlen; im Gegenzug ist der Nachlass dazu verpflichtet, den Besitzanspruch auf das Gemälde zugunsten des Leopold Museums aufzugeben. Die US-Regierung verpflichtete sich, die Einziehungsklage abzuweisen und das Gemälde an das Leopold Museum freizugeben.

All future public or published written references to the Painting and reproductions of the Painting by or on behalf of the Foundation, or authorized or allowed by or through the Foundation, including, without limitation, all signage, catalogue entries, display labels, narratives, video and all other media, shall not contain any language that is inconsistent with the contents of the Permanent Signage Statement.

8.     Representations and Warranties of the Parties.  Each of the Parties separately represents and warrants that it has the requisite power and authority to enter into this binding Stipulation and has obtained the necessary approvals and consents, whether governmental or otherwise, to perform the obligations contemplated by this Stipulation.  In addition, each of the particular individuals signing below on behalf of a Party represents and warrants that he or she has the requisite power and authority to sign on that Party's behalf.  The Estate further represents and warrants that the August 30, 2000 Decree Granting Ancillary Letters of Administration to Andre Bondi, entered by the Surrogate's Court of New York County in Matter No. 3223-00, is and remains in full force and effect at the time that he signs this Stipulation.

9.     Releases.  In consideration of the promises and covenants referenced herein, the Parties hereby agree to the following releases, effective upon the dismissal of the Action, as provided herein:

a.     Release by the Foundation.  The Foundation, on behalf of itself and its past, present and future predecessors, successors, assigns, affiliates, subsidiaries,

8

divisions, parents and related entities, heirs, agents, executors, administrators, employees,

officers, directors, shareholders, partners, trustees, owners, advisors, receivers,

indemnitors, indemnities, attorneys, insurers, transferees and representatives (including,

but not limited to all present, past and future Vorstandsmitglieder) of any kind

whatsoever (the "Foundation Releasors"), irrevocably and unconditionally releases,

settles, relinquishes, remises, acquits and fully, finally and forever discharges the

Government (including, without limitation, the United States Attorney's Office for the

Southern District of New York ("USAO"), ICE, CBP, the Department of Homeland

Security ("DHS"), the United States Customs Service, and the Department of Treasury)

and the Estate, together with their past, present and future predecessors, successors,

assigns, affiliates, subsidiaries, divisions, parents and related entities, heirs, agents,

executors, administrators, employees, officers, directors, shareholders, partners, trustees,

owners, advisors, receivers, indemnitors, indemnities, attorneys, insurers, transferees and

representatives of any kind whatsoever (the "Government and Estate Releasees"), of and

from any and all claims, demands, damages, actions, causes of action, debts, costs,

expenses, compensation, liabilities, controversies or agreements of any kind whatsoever,

arising out of, relating to or in any way connected with any action or inaction that has

occurred prior to or upon the date hereof, which the Foundation Releasors ever had, now

has or hereafter can, shall or may have against or concerning the Government and the

Estate Releasees, arising out of, resulting from, or in any way connected with the

Painting or the matters or events alleged in the Action.  It is understood and agreed that

this is a full and final release made to fully and finally compromise any and all claims

which were or could ever be asserted by the Foundation Releasors against the

Government and the Estate Releasees concerning the Painting or the matters or events alleged in the Action; *provided however,* that this release does not apply and is without prejudice to any claim the Foundation may have against the Government and the Estate for a breach of this Stipulation. Nothing in this release shall in any way release, discharge or relieve the Government or the Estate from any of its obligations under this Stipulation.

     b.    <u>Release by the Estate</u>.  The Estate, on behalf of itself and its past, present and future predecessors, successors, assigns, affiliates, subsidiaries, divisions, parents and related entities, heirs, agents, executors, administrators, employees, officers, directors, shareholders, partners, trustees, owners, advisors, receivers, indemnitors, indemnities, attorneys, insurers, transferees and representatives of any kind whatsoever (the "Estate Releasors"), irrevocably and unconditionally releases, settles, relinquishes, remises, acquits and fully, finally and forever discharges the Government  (including, without limitation, the USAO, ICE, CBP, DHS, the United States Customs Service, and the Department of Treasury) and the Foundation, together with their past, present and future predecessors, successors, assigns, affiliates, subsidiaries, divisions, parents and related entities, heirs, agents, executors, administrators, employees, officers (including, but not limited to all present, past and future Vorstandsmitglieder), directors, shareholders, partners, trustees, owners, advisors, receivers, indemnitors, indemnities, attorneys, insurers, transferees and representatives of any kind whatsoever (the "Government and Foundation Releasees"), of and from any and all claims, demands, damages, actions, causes of action, debts, costs, expenses, compensation, liabilities, controversies or agreements of any kind whatsoever, arising out of, relating to or in any way connected with any action or inaction that has occurred prior to or upon the date hereof, which the

10

Estate Releasors ever had, now have or hereafter can, shall or may have against the

Government and Foundation Releasees, arising out of, resulting from, or in any way

connected with the Painting or the matters or events alleged in the Action.  It is

understood and agreed that this is a full and final release made to fully and finally

compromise any and all claims which were or could ever be asserted by the Estate

Releasors against the Government and the Foundation Releasees concerning the Painting

or the matters or events alleged in the Action; *provided however,* that this release does

not apply and is without prejudice to any claim the Estate may have against the

Foundation for a breach of this Stipulation. Nothing in this release shall in any way

release, discharge or relieve the Foundation from any of its obligations under this

Stipulation.

      c.      Bar of Future Claims by the Foundation or the Estate against the

Government.  The Foundation and the Estate are barred from asserting any claim against

the Government (including, without limitation, the USAO, ICE, CBP, DHS, the United

States Customs Service, and the Department of Treasury)  and any of its respective

officers, agents and employees worldwide, in their official and individual capacities, in

connection with or arising out of the seizure or restraint, or disposition of the Painting or

the commencement or prosecution of the Action, including, without limitation, any claim

that the Government did not have probable cause to seize the Painting, that the

Foundation or the Estate is a prevailing party or that the Foundation or the Estate is

entitled to attorney's fees or any award of interest. Furthermore, in consideration for the

release of the Painting, the Foundation and the Estate further agree to release and forever

discharge the Government (including, without limitation, the USAO, ICE, CBP, DHS,

11

the United States Customs Service and the Department of Treasury), and any of its officers, agents, servants, and employees, their heirs, successors, or assigns from any and all action, suits, proceedings, debts, dues, contracts, judgments, damages, claims, and /or demands whatsoever in law or equity which any claimants,  heirs, successors, or assigns ever had, now have, or may have in the future in connection in connection with the detention, seizure, release, or any other action or inaction of or regarding the Painting. The Foundation further agrees to hold and save the Government (including, without limitation, the USAO, ICE, CBP, DHS, the United States Customs Service and the Department of the Treasury), and their officers, agents, servants and employees, their heirs successors or assigns, harmless from any claims by any others, including costs and expenses for or on account of any and all lawsuits or claims of any character whatsoever in connection with the detention, seizure, release, or any other action or inaction of or regarding the Painting.

10.     Governing Law; Dispute Resolution.  This Stipulation, and the validity, performance, construction and enforceability thereof, shall be governed and construed in accordance with the laws of the State of New York, without regard to its choice-of-law rules. The United States District Court for the Southern District of New York shall retain exclusive jurisdiction and shall be the exclusive venue for the resolution of any dispute arising under, and concerning the interpretation and enforcement of, this Stipulation. The Foundation expressly consents to the jurisdiction of the United States District Court for the Southern District of New York for purposes of this paragraph, and waives any and all rights, privileges and immunities it may have under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §1602, et seq. (the "FSIA"), including any claim that it is immune from such jurisdiction under the FSIA.

12

11.   <u>Cure</u>: No Party shall be deemed in breach of its obligations under this Stipulation unless it fails to cure such breach within three (3) business days after receipt of written notice of such breach.

12.   <u>Successors</u>. The Parties agree that this Stipulation shall be binding upon and inure to the benefit of the Parties and each of their successors, heirs and assigns.

13.   <u>Cooperation.</u> The Parties agree to execute any and all documents and to do and perform any and all acts reasonably necessary or proper to effectuate the terms and provisions of this Stipulation.

14.   <u>Headings</u>. The headings used in this Stipulation are for convenience only, are not part of this Stipulation, and will not alter or determine any rights or obligations under this Stipulation.

15.   <u>Counterparts</u>. This Stipulation may be signed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. An electronically transmitted counterpart of this Stipulation shall constitute an original for all purposes.

16.   <u>Execution and Delivery Required</u>. This Stipulation shall not constitute a binding Stipulation unless and until it has been executed and delivered by all of the Parties.

17.   <u>Mutual Drafting</u>. This Stipulation represents a bargained-for Stipulation resulting from the negotiation of the Parties. This Stipulation shall be deemed as joint work product of all Parties and their respective counsel, and all Parties shall be considered the drafters of this Stipulation. It is agreed to and understood that the general rule that ambiguities are to be

13

construed against the drafting party shall not apply to this Stipulation.  By their authorized signatures below, the Parties certify that they have carefully read and fully considered the terms of this Stipulation, that they have had an opportunity to discuss these terms with attorneys or advisors of their own choosing, that they agree to all of the terms of this Stipulation, that they intend to be bound by them and to fulfill the promises set forth herein, and that they voluntarily and knowingly enter into this Stipulation with full understanding of its binding legal consequences.

18.    Severability.  Whenever possible, each provision and term of this Stipulation shall be interpreted in such a manner as to be valid and enforceable.  In the event that any provision or term should be determined to be or rendered invalid or unenforceable, all other provisions and terms of this Stipulation shall remain valid and enforceable so long as the Parties' intentions in this Stipulation may thereby be effectuated.

19.    Entire Stipulation.  This Stipulation contains the entire Stipulation and understanding among the Parties pertaining to the subject of this Stipulation and supersedes and replaces all prior and contemporaneous negotiations, stipulations and agreements, and proposed stipulations and agreements, written or oral.  Each of the Parties hereto acknowledges that no Party, nor any agent or attorney of any Party, has made any promise, representation or warranty whatsoever, expressed or implied, not expressly contained in this Stipulation concerning this settlement, to induce that Party to execute this Stipulation.

20.    No Waiver or Modification.  No waiver, amendment or modification of this Stipulation shall be valid unless in writing and signed by each of the Parties.  The Parties shall promptly notify the Court of any modification or amendment to this Stipulation.

14

21.    <u>Notice</u>.  Any notice, demand, approval, consent, or other communication required or desired to be given under this Stipulation in writing shall be directed to the Party involved at the address indicated below and shall be delivered by electronic mail or Federal Express or similar overnight delivery service to the following persons:

<u>FOUNDATION</u>

Leopold Museum-Privatstiftung
Museumsplatz 1
A-1070 Wien
Austria
Attn: Mag. Peter Weinhaeupl
Fax: 011-49 1 525 70 1500
Email: Weinhaeupl@leopoldmuseum.org

<u>With a copy to</u>:

Smith, Gambrell & Russell, LLP
250 Park Avenue, Suite 1900
New York, New York 10177
Attn: William M. Barron, Esq.
Fax: (212) 907-9815
Email: WBarron@sgrlaw.com

<u>ESTATE</u>

The Estate of Lea Bondi Jaray
c/o Herrick, Feinstein LLP
2 Park Avenue
New York, New York 10016
Attn: Howard N. Spiegler, Esq.
Fax: (212) 545-3392
Email: hspiegler@herrick.com

GOVERNMENT

United States Department of Justice
U.S. Attorney's Office, Southern District of New York
Asset Forfeiture Unit
One St. Andrew's Plaza
New York, New York  10007
Attn: AUSA Sharon Cohen Levin, Esq.
Fax: (212) 637-0421
Email: sharon.levin@usdoj.gov


Any Party may, from time to time, change its address(es) for notice hereunder by giving

the other Parties written notice of such change.

16

IN WITNESS WHEREOF, the Parties hereto and their respective attorneys have executed this Stipulation effective as of the day and year first above written.

**ESTATE OF LEA BONDI JARAY**

By:_____
Names: <u>Edith Renee Southwell</u>
Title: <u>Administratrix *de bonis non*</u>


By:_____
Names: <u>Andre Bondi</u>
Title: <u>Ancillary Administrator</u>


**HERRICK, FEINSTEIN LLP**

By: _____
    Howard N. Spiegler
    hspiegler@herrick.com


**UNITED STATES OF AMERICA**

**PREET BHARARA**
United States Attorney for the
Southern District of New York
Attorneys for the United States of America


By: _____
    Sharon Cohen Levin
    Sharon.Levin@usdoj.gov


**LEOPOLD MUSEUM-PRIVATSTIFUNG**

By:_____
Name: _____
Title: _____


**SMITH, GAMBRELL & RUSSELL, LLP**

By: _____
    William M. Barron
    WBarron@sgrlaw.com


**SO ORDERED:**


_____
HONORABLE LORETTA A. PRESKA
CHIEF UNITED STATES DISTRICT JUDGE

Date: _____

IN WITNESS WHEREOF, the Parties hereto and their respective attorneys have

executed this Stipulation effective as of the day and year first above written.

**ESTATE OF LEA BONDI JARAY**    **HERRICK, FEINSTEIN LLP**


By:_____    By: _____
Names: Edith Renee Southwell      Howard N. Spiegler
Title: Administratrix *de bonis non*     hspiegler@herrick.com


By:_____
Names: Andre Bondi
Title: Ancillary Administrator


**UNITED STATES OF AMERICA**   **PREET BHARARA**
              United States Attorney for the
              Southern District of New York
              Attorneys for the United States of America


              By: _____
                Sharon Cohen Levin
                Sharon.Levin@usdoj.gov


**LEOPOLD MUSEUM-PRIVATSTIFUNG** **SMITH, GAMBRELL & RUSSELL, LLP**


By:_____    By: _____
Name: _____     William M. Barron
Title: _____     WBarron@sgrlaw.com


**SO ORDERED:**


              Date: _____
_____
HONORABLE LORETTA A. PRESKA
CHIEF UNITED STATES DISTRICT JUDGE

IN WITNESS WHEREOF, the Parties hereto and their respective attorneys have

executed this Stipulation effective as of the day and year first above written.

**ESTATE OF LEA BONDI JARAY**

By: _Edith Southwell_
Names: Edith Renee Southwell
Title: Administratrix *de bonis non*


By:_____
Names: Andre Bondi
Title: Ancillary Administrator


**HERRICK, FEINSTEIN LLP**

By: _____
    Howard N. Spiegler
    hspiegler@herrick.com


**UNITED STATES OF AMERICA**


**PREET BHARARA**
United States Attorney for the
Southern District of New York
Attorneys for the United States of America


By: _____
    Sharon Cohen Levin
    Sharon.Levin@usdoj.gov


**LEOPOLD MUSEUM-PRIVATSTIFUNG**

By:_____
Name: _____
Title: _____


**SMITH, GAMBRELL & RUSSELL, LLP**

By: _____
    William M. Barron
    WBarron@sgrlaw.com


**SO ORDERED:**


_____
**HONORABLE LORETTA A. PRESKA**
**CHIEF UNITED STATES DISTRICT JUDGE**

Date: _____


16

IN WITNESS WHEREOF, the Parties hereto and their respective attorneys have

executed this Stipulation effective as of the day and year first above written.

**ESTATE OF LEA BONDI JARAY**                    **HERRICK, FEINSTEIN LLP**

By:_____                     By: _____
Names: <u>Edith Renee Southwell</u>                         Howard N. Spiegler
Title: Ad<u>ministratrix *de bonis non*</u>                         hspiegler@herrick.com

By:_____
Names: <u>Andre Bondi</u>
Title: <u>Ancillary Administrator</u>

**UNITED STATES OF AMERICA**                     **PREET BHARARA**
                                                 United States Attorney for the
                                                 Southern District of New York
                                                 Attorneys for the United States of America

                                                 By: _____
                                                      Sharon Cohen Levin
                                                      Sharon.Levin@usdoj.gov

**LEOPOLD MUSEUM-PRIVATSTIFUNG**                 **SMITH, GAMBRELL & RUSSELL, LLP**

By:_____                     By: _____
Name:_____                        William M. Barron
Title:_____                        WBarron@sgrlaw.com

**SO ORDERED:**

                                                 Date: _____
_____
HONORABLE LORETTA A. PRESKA
CHIEF UNITED STATES DISTRICT JUDGE

17

IN WITNESS WHEREOF, the Parties hereto and their respective attorneys have

executed this Stipulation effective as of the day and year first above written.

**ESTATE OF LEA BONDI JARAY**          **HERRICK, FEINSTEIN LLP**

By:_____            By: _____
Names: Edith Renee Southwell               Howard N. Spiegler
Title: Administratrix *de bonis non*       hspiegler@herrick.com


By:_____
Names: Andre Bondi
Title: Ancillary Administrator


**UNITED STATES OF AMERICA**           **PREET BHARARA**
                                        United States Attorney for the
                                        Southern District of New York
                                        Attorneys for the United States of America


                                        By: _____
                                            Sharon Cohen Levin
                                            Sharon.Levin@usdoj.gov


**LEOPOLD MUSEUM-PRIVATSTIFUNG**       **SMITH, GAMBRELL & RUSSELL, LLP**

By:_____            By: _____
Name:_____                William M. Barron
Title:_____               WBarron@sgrlaw.com


**SO ORDERED:**


                                        Date:

IN WITNESS WHEREOF, the Parties hereto and their respective attorneys have

executed this Stipulation effective as of the day and year first above written.

**ESTATE OF LEA BONDI JARAY**                    **HERRICK, FEINSTEIN LLP**


By:_____            By: _____
Names: Edith Renee Southwell                      Howard N. Spiegler
Title: Administratrix *de bonis non*                 hspiegler@herrick.com


By:_____
Names: Andre Bondi
Title: Ancillary Administrator


**UNITED STATES OF AMERICA**                    **PREET BHARARA**
                                                                 United States Attorney for the
                                                                 Southern District of New York
                                                                 Attorneys for the United States of America

                                                                 By: _____
                                                                       Sharon Cohen Levin
                                                                       Sharon.Levin@usdoj.gov


**LEOPOLD MUSEUM-PRIVATSTIFUNG**        **SMITH, GAMBRELL & RUSSELL, LLP**


By:_____            By: _____
Name: _____                  William M. Barron
Title: _____                  WBarron@sgrlaw.com


**SO ORDERED:**


_____
HONORABLE LORETTA A. PRESKA              Date: _July 20, 2010_
CHIEF UNITED STATES DISTRICT JUDGE

**EXHIBIT A**
**ICE/Foundation Receipt**

One (1) painting measuring 12 7/8 x 15 5/8 inches (32.7 x 39.8 cm), oil on wood, signed and dated "Egon Schiele 1912", entitled "Bildnis Vally" or "Portrait of Wally" by Austrian artist Egon Schiele (the "Painting") was released by the United States Department of Immigration and Customs Enforcement ("ICE") to the Leopold Museum-Privatstifung (the "Foundation") at _____ on _____,2010 at approximately _____am/pm.


FOR THE UNITED STATES DEPARTMENT OF IMMIGRATION AND CUSTOMS ENFORCEMENT (ICE)



_____
Name:
Title:


FOR THE LEOPOLD MUSEUM-PRIVATSTIFUNG (THE FOUNDATION)

_____
Name:
Title:

18